*Kunkel and Simonton, for plaintiff.*

*Alricks and Lamberton, for defendant.*

---

*Court of Common Pleas, Dauphin County, December 27th, 1867.*

EBERLY v. ROWLAND.

In a foreign attachment no affidavit showing the defendant to be the citizen of another State or country, and that he owed the plaintiff a real subsisting debt is necessary. The property of a person who leaves his residence with the avowed intention of returning soon, but remains away eighteen months, and enters no appearance when suit is brought, is subject to foreign attachment. It need not be shown that he has gained a residence elsewhere.

BY THE COURT.—On the 13th day of June, 1866, Robert B. Rowland left this State for the Southwest, and has never yet returned. On the 2d day of August, 1866, a foreign attachment issued to seize his property and effects in the hands of Irwin Nicholson and others, garnishees. He left property in this city at the time of his departure, probably worth about $200, the subject of attachment and debts amounting to over eight hundred dollars. On the 22d of November, 1866, Mr. Etter appeared for the defendant and the garnishee to move for a rule on the plaintiff to file an affidavit of his cause of action. On the 31st of January, 1867, on motion, a rule was granted on the plaintiff to show cause of action and why the attachment should not be dissolved. Much testimony has been taken for the purpose of proving that the defendant was not, and is not, the subject of a foreign attachment; and it is complained that the proceeding is entirely irregular. First. It is said that an affidavit should be made and filed before issuing the writ, showing the defendant to be the citizen of another State or country, and that he owed to the plaintiff a real subsisting debt, with the amount thereof. There is no law

[Eberly *v.* Rowland.]

in Pennsylvania that we are aware of, which requires such an affidavit. It must be made before a domestic attachment can issue, but no such practice has prevailed in case of foreign attaahment. In the latter writ the plaintiff can be cited to show cause of action the same as on writs of *capias ad respondendum*. This is shown after suit brought, if a rule is taken, not otherwise. The only instance in which a previous affidavit is required is where the garnishee is asked to be arrested lest he should carry off or use the effects. There it is prescribed by the statute.

The cause of action is not now disputed, but it is contended that the defendant is a citizen of Pennsylvania, and not subject to this writ. By the act of Assembly the defendant must be a non-resident within the commonwealth at the time of its impetration; and residence is established by acts and intentions. Where a person leaves the State with the manifest intention of immediately returning, he is not subject to this form of proceeding. Where he goes into another State or foreign country, with intent to make it his place of abode, and abandons his home here, he becomes the subject of a foreign attachment so soon as he reaches his intended domicil, and perhaps at once after leaving the boundaries of Pennsylvania. Where there is an avowed intention of returning, such avowal will be taken in the first instance as evidence of the fact; but a long-continued absence may raise the conviction that the intention to return was only pretended, and thus destroy the rights of citizenship.

Residence and domicil are not treated as synonymous under the attachment laws of New York, and I am inclined to think that ours will bear the same interpretation (1 Seld. 423). Our attachment laws have received a construction in various cases. Where a resident of the State started to leave it with the avowed intention of moving away, it was held that he was not the subject of a foreign attachment, he having reached no further than Pittsburg at the time of the impetration of the writ (1 Dal. 480). He was still *residing* within the State, though intending to leave it. In Pfouts *v.* Comford (12 Casey, 420), it is said by the reporter that the residence continues until the party has *obtained* another place of abode with the intention of remaining in it. Such is not the language of the court; but the person "remained a resident of the State until he left it with his family on his way to a new home elsewhere." The facts of that case fully support the decision, which is perfectly sound. There the man left his abode with his family for the avowed purpose of taking them to a relative in another part of the State, and then seeking a home elsewhere; but declaring his intention to return in about three weeks. After he had been gone but three days, and most probably before he had left the State, the writ in question issued. He returned with his family to his former abode at the end of the three weeks; but in the

mean time his goods were attached.   This was clearly irregular.
The family had not left the State, and probably the debtor him-
self had not.   The avowed intention was to return soon, and then
take his final departure; that was afterwards accomplished.   Such
a person is not the subject of either a foreign or domestic attach-
ment.   In Fuller *v.* Ryan (8 Harris, 144), it was rightly held
that the mere temporary absence from the State by the debtor, for
the purpose of completing a job of work, his family all the time
residing here, did not render him subject to a foreign attachment.
The case before us is unlike any of these.   Here a citizen of the
State, having no family, leaves his place of business with the
avowed intention of returning soon; after he had been gone about
three months a foreign attachment was issued by a creditor.   The
few goods left behind him were attached, but that does not compel
an appearance.   Three months later an attorney, on the request of
a garnishee, enters an appearance, merely for the purpose of requir-
ing the plaintiff to show his cause of action.   At the end of over
two months more the rule is taken, and also to show cause why
the attachment should not be dissolved, still no appearance is in-
duced.   At the end of nearly another year we are called on to
decide the case.   The defendant has not yet returned to his native
State, nor has he written a word to any one since the 1st of June,
1867, when a letter came from the State of Mississippi.   He had,
according to the evidence, written from different States during his
absence, in all declaring an intention to return, but still remaining
away.   We think that there is ample reason to believe that the
defendant has no intention of returning, but has taken up his
abode elsewhere, or is a mere wanderer.   It is contended that the
plaintiff must not only prove that the defendant has left the State
for the avowed purpose of effecting a change of residence, but that
he has actually become a citizen of another State.   This is, in our
own opinion, asking more than the law requires.   That there is
no present intention to return is more strongly evidenced by the
party's acts than by mere professions, which are easily made.   He
might readily exercise all the rights of citizenship in another State
without a possibility of the plaintiff showing it.   Some of the
States, where the defendant spent a portion of his time, requires
but six months' residence to become a citizen, and one of them but
ten days.   It must be borne in mind that the object of this pro-
ceeding is merely to compel an appearance.   And we must also
consider that this motion is not on behalf of creditors, either under
a domestic attachment or otherwise, but of the defendant himself,
who will not appear, or of the garnishee, who is a mere stake-
holder, and has no right to interfere.

Creditors under domestic attachment are entitled to a much
more favorable consideration, as was held in the case of Lazarus
Barnet's Case (1 Dal. 153), than the party himself.   There are many

cases where the absent debtors will possess immunity from their debts, if so strict a construction is put on the foreign attachment law, as is contended for here. The domestic attachment is often unavailing, as no one can conscientiously make the required affidavit as to the party's intention, etc. It is said that this case should be tested by what had occurred at the time the writ issued; but we hold that the subsequent conduct of the party is strong evidence of his original intention, showing that the alleged design to return was only simulated. We must decline to set aside the writ in this case, and discharge the rule.

*Miller and McAlarney, for plaintiff.*

*Etter, for defendant.*